Page number 19-5116 Community Oncology Alliance, Inc. Appellate, Office of Management and Budget at ELLE Mrs. Shaffer for the Appellate, Mrs. Dixon for the Appellate Good morning. Good morning. Good morning, Your Honors, and may it please the Court. My name is Lawrence Stasel on behalf of Appellate Community Oncology Alliance. In this case, Community Oncology raised a constitutional challenge to the application of the Balanced Budget Act to permit the executive branch to amend an entirely separate statute, the Medicare Modernization Act, by changing the formula for reimbursement of Part B drugs. On this appeal, Community Oncology contends the District Court erred in two ways. First, by improperly rejecting Appellant's application for a free judge court, and second, by erroneously dismissing Appellant's complaint for lack of subject matter jurisdiction. There were two key rulings that we contest that formed the basis of those ultimate decisions. First, the District Court ruled that Appellant, in its complaint for declaratory and injunctive relief under Section 922A2 of the Balanced Budget Act, did not allege a constitutional claim. And that then led to the Court's further conclusion that a three-judge court was not warranted. And the second erroneous ruling was that the District Court, despite the claims under the Balanced Budget Act, said that Community Oncology's claim was really arising under the Medicare Act, and then held that the claims were barred by virtue of a preclusion for judicial review of, quote, the determinations of payment amounts under the Medicare Monetization Act. It wasn't the payment very plainly under the Medicare Act. I'm sorry, I didn't hear you. It wasn't the payment very clearly under the Medicare Act, so therefore the claim would have been... The determinant of payments itself are clearly defined under the Medicare Act. Yes, right. But the Medicare Act created a formula, and it said specifically that the reimbursement rate for Part B drugs will be the average sales price plus 6%. Yes. It was a separate statute, the Balanced Budget Act. The later statute. The later statute that gave the executive branch the right to effectively amend the Medicare Act. No, it gave the executive branch direction to act under the Balanced Budget Act in applying the Medicare Act. But the directions, Your Honor, were to impose sequesters that in this case led to the executive branch, not the legislature, redefining the formula and saying that the... How did the executive branch rather than the legislature do this? I'll tell you precisely. The legislature told them, Congress told them, under the Balanced Budget Act, to make certain sequestrations. How is the executive branch supposed to act other than to follow the statute? Well, because it gave the executive branch discretion to reduce the form... A lot of statutes do that, but that doesn't make it a constitutional claim. The reason I think... You say that you disagree with whether the executive applies. No, Your Honor, here's where I think that the problem lies, and that's set out in the Clinton versus City of New York case. Because what effectively in that case you could argue, Congress did the same thing. Congress said to the President, we have the Balanced Budget Act, we have the Tax Reform Act, but if you don't like certain things in that, we're going to let you change them. And the Supreme Court said that is impermissible because under the Presentment Clause, that allows the executive branch effectively to either repeal or amend a congressional act. Similarly here, where the executive branch was given the discretion to reduce by up to 2% what the formula in the Medicare Act said, we contend that that really is no different than what happened in Clinton. Mr. Stachel, even if you're right that the district court overlooked the constitutional claim that was pleaded in the complaint, which I think you characterize as an as-applied challenge to the sequestration order, under the statute that allows certain claims to be expedited, it sounds like your claim falls in, what is it, 922A1, which is a claim for declaratory or injunctive relief on the ground that an order that might be issued pursuant to the Balanced Budget Act, in other words, a sequestration order, violates the Constitution. And that sounds like that exactly describes the claim you're bringing, that a sequestration order violates the Constitution because it amounts to vesting the executive with this line-item veto-like authority. We actually contend that it's not 922A1, but that our claim is brought under 922A2. Which you have to in order to have an entitlement to it. Correct, because that applies to individuals and not members of Congress. But the language of 922A says that any member, I'm sorry, any person adversely affected by any action taken under this title may bring an action concerning the constitutionality of this title. Of this title. Of this title. Of the Balanced Budget Act. You're not challenging the Balanced Budget Act. You're challenging the way it's been applied through sequestration orders, which are explicitly discussed in 922A1. And given the statute, even if we would agree with you that the district judge erroneously overlooked your constitutional challenge to the sequestration order, I'm not sure that gets you there. Well, here's what I think it does, Your Honor, because the term concerning the constitutionality of this title we think means that we don't have to make a facial challenge that the entire Balanced Budget Act is unconstitutional. What we've said specifically, as applied by the executive branch in amending a separate statute, that application is something that also concerns the constitutionality. Again, that might get you there, but we have 922A1, which seems quite clearly to talk about constitutional challenges to sequestration orders, if any. You know, Congress does fail to get its act together and stay within the Balanced Budget Act, and there are sequestration orders. And a challenge to a sequestration order as a violation of the constitution, just, it's hard not to read that as the right avenue for your case. And as you know, the reason that you're struggling against that is because only members of Congress can bring those claims before a three-judge court. But I think those deal with anticipated orders. In this case, we already had the action taken by a statute that permitted it. And so if our contention is that if the statute, the Balanced Budget Act, permits the executive branch the discretion to make an amendment, how is that any different than in Clinton v. New York, where the statute said you are permitted to excise any provisions of the Balanced Budget Act or the Tax Reform Act that you don't like? And so that's effectively what we're saying happened here, and that we think that the language concerning the constitutionality of this title can, that that can be embraced by that language. Because concerning in the case law that we provided does have a connotation of a wider breadth, and so we think that the use of the word title shouldn't preclude a challenge that otherwise so clearly fits within the prohibitions of Clinton. Kennedy. That might make sense in the, excuse me, in the abstract if we just had A2, but it's a harder case for you in the context of a statute which distinguishes between challenges to an order and challenges to the title. Well, I think that to limit, it's not simply the particular sequestration order that is the challenge here. The challenge, I mean, that certainly is what creates the specific claim. But the overall challenge is to, as I said, the structure of the two statutes side by side that permits the executive branch and the Balanced Budget Act to affect what has already been ruled upon by Congress to be a formula. If you're under 922A2, there is this requirement under 922A4 that you serve the complaint on the House and Senate. Was that something that you did? I don't believe that the complaint itself was served on the House and Senate, but I know that there was certainly that the secretary was put on notice well before the complaint was filed of the objections specifically as set out, and there are exhibits in the joint appendix that indicate that. And when you say that, that actually leads me to my next question, which is about presentment. Tell us how you satisfied presentment because the secretary doesn't think you did. In terms of the channeling requirement? Presentment under Section 405, yeah. Okay, I didn't know if you meant presentment under the constitutional clause. Okay. First of all, there were numerous objections that the secretary made to the complaint. The only one that the district court judge ruled on was the issue that we've been discussing. The channeling argument that the claim had not been properly presented was not one that was ruled upon by the district judge, so we don't think it's appropriate here. Isn't it jurisdictional? Isn't it jurisdictional? I don't believe it is, Your Honor. You don't think so? No. The presentment under our precedent, the presentment requirement is jurisdictional even if the exhaustion requirement may be waived. So in that sense, okay, let me correct myself. Yeah. And that's the only issue that the secretary took up, the presentment, not the exhaustion. Right. And here it's clear that there was an affidavit submitted below by the executive director of the Community Oncology Alliance that specifically said that claims themselves that had been submitted by oncologists and had been paid at the revised formula rate, and under the case law that we cited in our brief that that is sufficient to satisfy the presentment. It does not have to go all the way up to the secretary. Right. But you're not seeking review of any one of those particular claims. You're seeking review of a legal issue that's embedded in all of those claims, just in the abstract. That's absolutely right. And, in fact ---- That's what the channeling requirement says you can't do. You need to be seeking review of a final decision of the secretary made after a hearing to which you're a party. I think if this claim arose under the Medicare Act, that would be true. But because we ---- It does arise under the Medicare Act for these purposes. Well, our contention, Your Honor, is that as alleged in the complaint, the claim arises through an application of the balanced budget act. What's the source of your claimed entitlement to reimbursement for Part B Medicare drugs? We're not seeking reimbursement. The claim seeks declaration and injunctive relief. It is not seeking individual reimbursement claims. And we're making no argument ---- What's the source of your constitutional injury, your client's injury? It's that members aren't getting sufficient reimbursement for Part B Medicare drugs. Well, it certainly affects the reimbursement. But we don't have individualized claims for the differential between ASP plus 6 percent versus ASP plus 4.3 percent. It's not being ---- I mean, if you don't have individual claims, that's why you haven't satisfied presentment requirement. Your Honor, here's ---- I think that we have statutory standing by virtue of an association group. I think that the claim is that under the balanced budget act, as you know, as I've said probably too many times today, that we're making an as-applied challenge. Sure. And you want to say that your claim arises under the balanced budget act rather than under the Medicare act? Correct. But the Supreme Court decided Weinberger versus Salphy, which says that if you bring ---- if you're bringing a constitutional challenge to some limitation on Medicare payment, it's actually Social Security, but the same principle, right? The claim arises under the Medicare statute for purposes of 405G and 405H, even if it also arises under the Constitution in the sense that Constitution is some alternative source of law that you're invoking. That same principle governs this case where you're invoking a different statute, the balanced budget act, in order to impact how much money you are entitled to under the Medicare act. Well, I think that, as we argued in our brief, I think we do satisfy the presentment provisions under the Medicare act. I think that the steps taken that were outlined are sufficient and that that is ---- that I think a national association for home care, for example, the ---- we were not required to bring the constitutional claim to the secretary, but rather by presenting actual claims that were affected by the sequester, that was sufficient. I know this isn't before us, but I'm just trying to understand the nature of the case that you're bringing. If you were to prevail and obtain declaratory inductive relief, is it your view that then oncologists could go back retrospectively and try to get supplemental payment or only prospectively? Prospectively. Only prospectively. Yeah. We're not ---- first of all, we're not representing individual oncologists, so I can't speak to all of them, but our claim in anticipation of that question, yes, we are seeking that if the statute were deemed to be unconstitutional as applied, that we would go back to the formula that exists in the act going forward. And how ---- I mean, if I were an oncologist that is part of your alliance and I disagreed and I want to try to go back and get what I thought was under, you know, the increment of undercompensation going back to whatever, 2013, would I be precluded? So, yeah, I think that our narrow answer would be, and then I'll get to the harder part, our narrow answer would be that if the relief that we're seeking were granted, that it would set the clock back as of today. To then say, if an individual oncologist said, well, gee, since that statute was unconstitutional and I've had, you know, six years of being under-reimbursed, I want to make a claim, I honestly don't know how that would fare. And obviously that's not before us. Another question also not before us, just trying to understand the nature of your case, and, you know, the government raises this, but you're in a way benefiting from the limitation within the sequester that Medicare services, payments for Medicare services are reduced by a much smaller amount than the otherwise across-the-board cuts. And your argument is, no, that pharmaceuticals aren't services under that? And why is that beneficial to your members? I'm not really following. And perhaps in retrospect it was a little bit confusingly presented in the complaint. It is true that under Section 906D1A of the Balanced Budget Act, it did make reference to reimbursement cuts for payments for, quote, services furnished. And in the complaint we did identify that it wasn't clear that drugs was to be included in services. The purpose of doing that there was not to make an independent statutory interpretation claim, but to suggest that this, in fact, may have supported the idea that not only because we know under Clinton, even if Congress wanted to give the power to the executive branch to modify legislation, it can't. But we were suggesting that it wasn't even clear that Congress wanted that to happen here. But I think in doing so it probably created some confusion. And perhaps even the district court, I think, was confused because at the end she found, despite numerous references throughout the complaint to the Constitution, that we didn't make one. The vast bulk of your complaint argues that the action here was inconsistent with the Medicare statute. Well, I know that the government says that they're only, quote, stray allegations pertaining to constitutionality. I think that we went through pretty carefully and showed that in the preliminary statement we talked about effectively amending. We talked about de facto amending. You have general language about effectively amending. You repeatedly invoke the presentment clause and separation of powers. In the abstract, those could support a Clinton versus Jones argument, or they could support a Dalton versus Specter argument. But they're usually invoked in connection with an argument that statutory formula is the statutory formula. And, I mean, I think the closest you came, which is pretty good for you, but it is just a stray line, is the reference in the complaint to this looks like a line-item veto act. But most of it is really keyed to the Medicare statute. Well, I don't know if I've done a full quantitative analysis or a word count. I do think, as I say, that there are, in paragraphs 34 and 37, we talked about the line-item veto, as you indicated. In 53, we said that this was tantamount to an executive legislation drafting and represents a separation of powers violation. In paragraph 53, we talk about what section 922A2 provides in terms of a right for aggrieved parties to make claims. So I can't dispute that there is plenty of discussion about the statute itself. But I think at the end, I don't think that should have disqualified us and lead to a decision that the district court made, which flatly said, she says that the community oncology does not claim that applying the balanced budget act to the reimbursement formula for Medicare Part B drugs would violate the separation of powers. Do you agree that at least to the extent the complaint has an argument of the form, the statutory formula under Medicare, there's no authorization under the balanced budget act to change that, the President went and changed it, and therefore violated the separation of powers, that sort of claim can't go to a three-judge district court? I think it can go to a three-judge court. If it's properly brought under 922A2, then I understand the Court has questions about that. But if it does, I think 922A5 clearly says that that shall go to a three-judge court. Dalton v. Specter says that you can't make what's otherwise a statutory claim into a constitutional claim just by saying the executive has no statutory authority, and therefore it's violating separation of powers. That's a big part of the complaint. Regardless of whether that's all of your complaint, that is a big part of it. But Dalton v. Spencer, first of all, doesn't preclude a parallel track that a statutory claim and a constitutional claim could have been brought. And the whole thing there was that if it's merely a statutory claim, it doesn't quote automatically, and I think the district court or something had said, that that automatically raises constitutional issues. I think we have certainly, from a pleading standpoint, said what's sufficient. Thank you, Your Honor. I'll reserve 25 minutes for rebuttal. Thank you so much. Good morning. Good morning, and may it please the Court. Courtney Dixon for the government. Your Honor, plaintiffs do not present a claim concerning the constitutionality of the Balanced Budget Act itself. Why not? I mean, I'll give you the spot that 90 percent of the complaint is what I'm for shorthand calling a Dalton v. Specter statutory claim. Your Honor. But they do have this reference to the Line Item Veto Act. And why doesn't that, at least for pleading purposes, tee up an argument that the problem with this statute is the same problem in Clinton v. New York? Your Honor, even assuming that that's a constitutional claim, and I can put a pin in that and come back and discuss it, that still doesn't get them, as they have alleged their claim here, into Section 922A2. Because at most, they are challenging particular sequestration orders that have been issued under the Balanced Budget Act. But just on the constitutional versus statutory point, does that get – does that check the box on constitutional? Your Honor, I think the district court correctly recognized that, as Your Honor said, the vast majority of all plaintiffs' claims are alleging a statutory interpretation argument, and they throw in allegations about the separation of powers and the presentment clause. That's not enough to turn what is otherwise a run-of-the-mill statutory argument into a constitutional claim. I would agree with you on that, but they also throw in the Line Item Veto Act. That's not developing the complaint in any manner, Your Honor. And it's kind of hard to understand even what they mean by those allegations, given that if they – I mean, a reasonably competent lawyer and civil appellate would think, oh, that's Clinton versus New York. Well, Your Honor, the plaintiffs' allegations, I think, amount to, well, even if Congress intended the sequestration of Medicare Part B drugs, that would still be this kind of problem. But, of course, if Congress intended for Medicare Part B drugs to be sequestered under the Balanced Budget Act, it's hard to see how that is, quote, executive legislation drafting, as they state in their complaint. But, again, even putting a pin in that, setting it aside, assuming they have a constitutional claim, it's not to the Balanced Budget Act itself. That's different from the allegations in their complaint. It's quite clear from the declaratory and injunctive relief that they seek. They only seek to have particular orders set aside. They allege how CMS and OMB are together implementing the Balanced Budget Act as applied to Medicare Part B drugs. And, of course, even in their reply in this Court, and as they've stated today, they're challenging particular sequestration orders, and their argument is only that Section 922A2 is broad enough to encompass that. But if you use – I think you just said that if Congress – if it were clear that Congress intended the sequestration to apply to Medicare Part B drugs, that it would be hard to see how there would be a separation of powers problem. But that really assumes an answer on the merits, doesn't it? I mean, they're presenting what they say is a claim, and whether it's a, you know, impermissible delegation or line-item veto, they're saying that for Congress even clearly and intentionally to give that sort of, you know, plenary authority to the executive branch is unconstitutional. I didn't mean to get into the merits, Your Honor, just to answer Judge Katz's questions about how it's not – it's not obvious to me that this is in any way similar to a Clinton v. New York type line-item veto argument. But I take Plaintiff's complaint entirely to be directed to sequestration orders that have been issued since 2013 that have applied, again, Medicare – sequestration to Medicare Part B drugs. And CMS and OMB are, of course, both named as defendants. And throughout the complaint, they allege how CMS and OMB are implementing Balanced Budget Act sequestration. That's a claim under A1, which only members of Congress can bring under this special review provision. It's a claim under A1 in the sense that they're only asking for narrowly targeted relief. But they're challenging particular sequestration orders. But if they have invoked this Clinton theory, the legal rationale would cover anything OMB does under the Balanced Budget Act. That's not how plaintiffs have drafted their complaint, Your Honor. Again, the complaint is entirely directed to – Well, and I'm distinguishing between the scope of the relief they're seeking and the breadth of the underlying legal theory. Again, Your Honor, it's not entirely clear to me that it's even the breadth of the underlying legal theory, given that Plaintiff's entire argument is that how this particular sequestration order since 2013 are unconstitutional specifically as they apply to the Medicare Modernization Act and some kind of rewriting of that statute in particular. So it really is here the implementation of Balanced Budget Act sequestration since 2013 as applied to the Medicare statutes, not to the title itself. Are there cases – this hasn't been briefed, and if the case were to proceed and the statutory conflict were adjudicated, it would be. But are you aware of cases where there was a particular specific statutory formula that was, because of its specificity, held to survive and not be subject to sequestration? I'm not aware of any. In any area of government. Your Honor, the only time that I know that this three-judge court provision has been invoked specifically was, in fact, the case that became Boucher v. Synar in the Supreme Court. A three-judge court was impaneled there, and it went directly to the Supreme Court. And, of course, that challenge was to the constitutionality of the comptroller general's then role in the statutory scheme. I think, of course, that kind of constitutional claim to the title itself and how sequestration worked across the board is quite different from plaintiff's claim here. So that's the one time that I know of, Your Honor, that this act was invoked. I'm not aware of any. But I'm actually not asking a 922 question. I'm asking a question assuming that this weren't a three-judge worthy claim because it didn't fall within 922A2, but could be decided by a sole district court judge. Are there other cases like that that said, whoa, whoa, sequestration can't apply to this, that, or the other specifically formulated spending provision because of its specificity and because of its generality? Not that I'm aware of, Your Honor, and I obviously haven't thought too hard about that question. Right. Here, of course, not only do we have the three-judge court problem, but plaintiff's claim arises under the Medicare statute, and so the Medicare statute independently requires plaintiff's claim to be presented to the agency, which they haven't done. Now, what about that? In terms of presentment, I understand there are the two separate issues, presentment and exhaustion. I gather you've abandoned the exhaustion claim in this court, but the presentment argument you do press, and Mr. Shacel says, well, you know, all of our clients have been presenting reams of claims, and indeed, in the declaration attached to the response to your argument in this regard, individual providers were identified, and the effect on their businesses of these lower reimbursements were cited. Right. First, I want to note that we haven't abandoned exhaustion. We've argued presentment here because, of course, that's the bare minimum, and they haven't satisfied that. So I don't want to say that we've abandoned exhaustion. But to go to Your Honor's question, the declaration that plaintiff identifies is from plaintiff's executive director. It was attached to the opposition to motion to dismiss. Your Honor, all that says is that all providers, not any particular provider identified, who have been reimbursed by Medicare have been reimbursed at the sequester amount. There's no doubt that that's the case. They don't state, Your Honor, that anyone disputed that reimbursement that they received, that they raised the legal argument to the agency. Do they have to do those things for presentment purposes? Yes, Your Honor. Maybe for exhaustion, but for presentment purposes, they just have to ask for reimbursement. I mean, don't they typically say, you know, this number of procedures at this code, and that's how they interact with the agency? Or am I missing something? The upshot of plaintiff's argument here is just that providers are receiving reimbursement at a sequester amount. As you stated, certainly that's the case because these payments are being sequestered. But plaintiffs haven't said to the agency, that's unlawful. I need more money. They haven't disputed that payment, and they haven't submitted, as far as we know, any claim for more money based on, hey, you can't sequester this money, it's unlawful. The entire point of the presentment requirement, Your Honor, is so that the agency can be presented with a legal argument and then make a decision in the first place, let alone the final decision that exhaustion requires. Under our cases, I don't see anything that says the presentment portion of the channeling requirement includes a legal argument. It's really about, you know, ripeness. We're avoiding an anticipatory challenge. Do we have, in fact, something that's already occurred that is being addressed? Is the agency actually acting in a way that the plaintiffs fear and claim that it will act? And, yes, we know that. We know that in spades. But the agency has, in fact, been implementing the sequestration as they challenge. In terms of requiring a provider to identify the relevant legal issue, Your Honor, that's this Court's Action Alliance for Senior Citizens case. In that case, the agency had erroneously provided money, I think refunds, and then it went to recoup that money, and people brought a legal claim, and the question was whether they had presented that to the agency. There were two potential statutory bases for recoupment or waiver of recoupment, and this Court held that as to one of them, the claim hadn't been presented to the agency because in all of their communications with the agency, no provider had said, hey, under this statute, you can't recoup my money. And so I think that pretty clearly, Your Honor, is that the relevant legal theory has to be identified to the agency. And this Court here said the idea that the agency is just supposed to know that a provider is dissatisfied and why, that would strip the presentment requirement of all meaning. And I think that's true of Plaintiff's claim here. The idea that the agency is just supposed to know that there's a particular legal theory by a provider that we're not supposed to be sequestering their funds and from that the presentment requirement is satisfied would not give the agency to make any decision at all. As I read Action Alliance, there we had a situation where there was no demand. There was no evidence that the individual had even made a demand for payment, and that had to be cleared up on remand. Whereas here, there is no question that members of the plaintiff organization have made many demands for payment. But, Your Honor, there's no indication that a provider has made a demand for a payment of this sequestered amount that they allegedly haven't received, for example. A provider hasn't said, hey, you were supposed to give me that 2 percent that's not in my payment, or you gave me a lower amount of money.  If they had, there's no authority on the Secretary to do anything about that. Well, first, Your Honor, even if the Secretary doesn't have the ability to address a particular legal contention, that doesn't excuse the presentment requirement. That's the Supreme Court's opinion in Illinois Council, for example. And second, I wouldn't want to get out ahead of what the agency would say if it were presented with this legal claim. Plaintiff makes various allegations that CMS had discretion to do various things that they haven't done, and so I don't want to, again, say what the agency would or wouldn't say if it was presented with this legal contention by a provider, which it undoubtedly has not been. So it is your position that an individual, for purposes of presentment, not for purposes of exhaustion, that the individual, in order to adequately present the claim, has to articulate a legal theory? How do you square that with Matthews v. Eldridge, and what's your best site for that, other than AHA? Well, a few things, Your Honor. On Matthews v. Eldridge, that was a provider who had communicated with the agency, filled out a questionnaire with the Social Security office, and then that claim arose in the context of that particular payment dispute. We don't even have anything close to that here. And to get to perhaps Your Honor's concern, there obviously could be questions in individual cases about, well, did you raise this theory, did you raise this theory, what theory is this? But here we have nothing. There's no indication that any provider at all has raised any kind of dispute with the agency about the payments that they're receiving. There's no payment decision before us. Right, Your Honor. We have no idea what happened in any individual adjudication. Yes, Your Honor. All we have here is plaintiff's statement that providers are receiving payments that they're receiving. That there were individual adjudications in which claims were presented. That's fine, but they're not seeking review of an individual denial. Yes, Your Honor. And even to back up, again, we don't know that any provider has disputed the payments that they're receiving from the agency at all. All plaintiffs have said is that, hey, people are getting paid a sequestered amount. And if that were enough for presentment, well, then everyone would have presented a claim because everyone would have been receiving these reimbursements. Are you saying they at least must ask for the rest of the money that would have been paid but for the sequestered amount? Yes, Your Honor. And that bare minimum, again, hasn't been done here. Nothing in the affidavit says they didn't. No, Your Honor. And again, plaintiffs dispute in their reply brief that they even have to show that. But, of course, that is the bare minimum of what presentment requires. And your best case for that is? Your Honor, we cite the Action Alliance case, but I think that's quite clearly the purpose of presentment, is that the agency has to be presented with an argument. And here we don't have any indication of that. Presented with an argument or presented with a claim? A claim, Your Honor, but a claim identifying a legal dispute that they have with the payment that they're receiving. Well, a claim for benefits that makes it concrete. I mean, as I read our cases trying to understand the difference between presentment and exhaustion, I understand the channeling requirement includes both. One, however, is jurisdictional. The other is not. The presentment is really an argument against a pre-enforcement challenge. It's saying, is there really something here that's actually happened that's not anticipatory, that's concrete? And then the argument about exhaustion is, and let's bring the agency's legal expertise to bear on the nature of the argument here. And I guess for presentment purposes in this posture, I don't take the Secretary to be disputing in any way, shape, or form that due to the sequester, the amounts of reimbursement are lower. They must be. They're not. The purpose of the presentment requirement, as described by this Supreme Court and this Court, is to give the agency an opportunity to make a decision in the first place. Exactly. And the decision has been made in this case, and you don't dispute that. No, Your Honor. We do dispute that. Given that the decision, again, payments are just being made on the sequester. No one has said to the agency, you owe me more money because I've been paid at the sequester amount. Give me the 2 percent that I haven't gotten. But the decision of payment has been made. People are receiving Medicare funds, I presume. I mean, again, they don't identify any particular provider, let alone state that any provider has been, has raised a claim to the agency for the payment that they're not receiving. Separating out the two things, they have identified particular providers, and they have identified that those providers are now getting less reimbursement. I mean, obviously, they could do that in a more granular way, but they have identified particular providers who they're saying are now struggling financially, which may not be the end of their exhaustion requirement, but they have done that. They name providers in their affidavit in an attempt to, I think, demonstrate their standing in the district court. Yes, but I mean that there's no indication that any provider has said to the agency, I deserve more money because I haven't, because of the legal theory or sequestration argument that's been advanced here. Right. And that's the presentment requirement, Your Honor. I'm not sure, you know, we have to decide on that second part. I'm not sure we have cases that have so clearly articulated it the way you do. What about the jurisdiction strip? Yes, Your Honor. What's your position here? Can I just ask one more question on presentment before we go? What about a different argument? We've been talking about whether presentment was satisfied. What about a different argument that you don't have to satisfy presentment because what's different about this case from all the other, all the other presentment cases involve either issues of Medicare law, including whether particular Medicare provisions are constitutional or not. Whereas this case, the other issue has nothing to do with HHS expertise under the Medicare Act. It's an OMB issue. And so there's just no point in having the Secretary of HHS address that. Your Honor, I think similar arguments can be made about constitutional claims or procedural APA claims. But when those claims also arise under the Medicare statute, they still have to be presented to the agency. And I think the same is true here. Plaintiff's entire basis for standing is that it has standing because its members are injured by allegedly receiving less Medicare reimbursement that they're entitled under Section 179. I mean, constitutional claims can shade into Medicare claims through avoidance doctrines and the like. It's not clear to me that there's the same kind of interrelationship between the Medicare side of this, which is how do you calculate ASP plus 6 percent, and the Clinton versus New York, how does the Balanced Budget Act work, and does it violate the separation of powers? They just seem very different. Clinton's claim could just as easily be restyled as a violation of Section 1395W3A, that they're entitled to payment by virtue of that provision that's specified in that provision, and that the Secretary, for example, is violating that by not giving them the payment to which they're entitled. It's indisputable, Your Honor, that their standing comes from the lack of Medicare reimbursement that they're receiving, and that's the substantive nature of their claims. I agree with you. The test articulated in the case is what's the basis for your standing and your claim for payment is met, no doubt about it. It just seems like this case is a little bit different. Your Honor, I think in Illinois counsel, the Supreme Court made clear that even if the Secretary doesn't have the authority or expertise to address a particular contention, that doesn't... I'm sorry. Let's move on to preclusion. Your Honor asked about the more specific preclusion provision. As we note in our brief, because resentment hasn't been satisfied, this Court can dismiss on that basis, and the agency can decide in the first instance, if a claim is prevented to it, whether Section 1395W3A applies. And as we noted in our brief, Your Honor, and as Judge Pillard, you indicated earlier, that makes good sense here, given that there's reason to doubt that a provider might share the legal theory that plaintiff advances here, given that the upshot of that could very well be that providers are worse off under the statutory interpretation that they have advanced. The agency can decide in the first instance whether this more specific preclusion provision, which is a preclusion of administrative and judicial review, might apply, and that was the order that this Court also addressed those two things in the American Hospital Association case. Addressed resentment first, and then left to the agency to decide whether the more specific provision applied. On the more specific provision, it says there shall be no review of determinations of payment amounts under this section. And Mr. Stasel argues that they're fine with the determination of payment amounts under this section. That's exactly what they want. What they're challenging is the superimposition on a determination of payment amounts under this section of a cut under the balanced budget amendment. And your position is that's nonetheless subject to this preclusion provision. Your Honor, subsection G, the preclusion provision, precludes determinations of payment amounts, and that subsection cross-references the Medicare provisions that relate to ultimate reimbursement determinations. This Court considered a similar language in the American Clinical Laboratories case and said that that suggests that Congress was trying to preclude review of ultimate payment determinations. And here we know that Section 1395W3A is the provision that governs payment amounts for drugs that fall within it. So I think the natural understanding of that language is that it precludes review of the ultimate reimbursement determinations for these drugs. It's the determination of the payment amount under the section because those are myriad and complicated and debatable and the system couldn't function if those calculations could be challenged. But, again, in American Clinical we said, well, there it wasn't stripped because, if I'm remembering the right case, because the data collection was a separate process and a separate provision. And here it's even more separate. After the determination of a payment amount, there's a whole separate statute that says, now look at that, and pare away some portion of it. So why wouldn't that, under that same logic, be separate and distinct kind of claim that's not precluded under this provision? I disagree that it's even more separate, Your Honor. If anything, it's even more straightforward in that this section precludes review of the ultimate reimbursement determinations, what CMS is paying for these drugs. Determination of those amounts under the section. Right, Your Honor. Not the payment. Determinations of them under the section. Yes, Your Honor. And this is not a determination of the section. I mean, I'm just beating you, beating a dead horse, but you get my point. No, beat away, Your Honor. The first introduction of the clause of subsection G where it says there shall be no determinations of judicial review under section 1395.00, et cetera, or otherwise, those are provisions that relate to the ultimate payment determination, what CMS is giving you at the end of the day. That's what plaintiffs are disputing here. There's no question what they're being given at the end of the day. I don't think that changes merely because another statute is adding a step that CMS has to do in that, if it's the ultimate reimbursement determination that's precluded. If anything, again, usually in these cases, this Court has, and that was the case in American Clinical Laboratories and some other, it's a tricky question of, well, they're trying to get review of this thing that happens before, and how much is that? But here. The question is degree of intertwinement, right? Right, Your Honor. And I mean, the cases, cases have two ideas running through them. One is, would review of the issue before the Court effectively unravel the preclusion? Right, Your Honor. And, you know, if the statute bars review of methodology and someone, or of estimates, and someone says, well, review the methodology used to review the estimates, you can't untangle one from the other. Right, Your Honor. This doesn't have that problem, right? The set of issues that would come up under the Balanced Budget Act are not in any way, shape, or form coextensive with the set of issues that come up under the ASP plus 6% calculations in the Medicare statute. So you don't have that problem. I think it's a matter, Your Honor, of the interpretation of the preclusion of review provision. Because, again, we think that section is most naturally read to preclude review of the ultimate reimbursement amounts that are paid for the drug under the section. If that were the case, then American Clinical Labs would have come out differently. Because that, too, the data that was put into the calculus under the separate data collection and calculation had an effect. And that's why anybody wants to be, it had an effect on the ultimate payment amounts. But it was, you know, it applied to people who aren't even seeking payments under the Medicare Act and extracted data from them. So it was just seen as a different statutory activity. And so, too, here, for the reasons Judge Katz has just articulated, it's a different question about how the line item veto act does or doesn't apply. We are, to the extent that the dispute, though, is about, hey, this is the money that I'm receiving. I think section G could very naturally be read to mean that Congress wanted to preclude further disputes about that ultimate reimbursement determination. But as we note in our brief, here, because the bare minimum presentment hasn't been satisfied, the agency can determine in the first instance when it's presented with a particular legal claim. And, again, that's particularly appropriate here because, one, we don't know if this theory would be advanced before the agency. And, two, the application of the preclusion provision might look differently depending on, you know, what exactly the claim before the agency is. You, and this, I guess, is more prominent when you're talking about the presentment and exhaustion process. Is there any question whatsoever that the Secretary could respond in a relevant way to a claimant, an oncology treating clinic that said, I want the full reimbursement amount unaffected by the sequester? What might even conceivably the agency add, or how might the agency decide that case in a way that would be more relevant to that issue than would, assuming the preclusion provision didn't apply, how that ultimately would be resolved in court? I don't know the answer to that, Your Honor. I don't want to get out in front of what the agency would say if it were presented with a concrete claim. But any idea of how, I mean, even theoretically, it could add value for the purposes of deciding the interplay of the balanced budget? Well, a few things. I mean, first, again, CMS does have a role in implementing balanced budget act sequestration when it gets an order from OMB, and that's a quite complicated process that I don't want to demonstrate my lack of knowledge of by trying to give it too much specifics. But second, even if, again, as I mentioned earlier, an agency doesn't have particular expertise or even authority to address a contention, that doesn't excuse presentment. I'll also note that a lot of the allegations in plaintiff's complaint go to the effect that sequestration has on the Medicare system as a whole and how it is harming Medicare recipients. And to the extent that plaintiffs have these larger arguments, the agency could very much have expertise and light to shed on those kind of allegations, Your Honor. But, again, I don't want to get out in front of the agency about what they would say if they are indeed presented with this kind of legal argument. Thank you. The district court should be affirmed. Thank you. Did Mr. Stasel have any time remaining for rebuttal? Counsel did not have any time remaining for rebuttal. Mr. Stasel, we'll give you two minutes. Oh, great. Thank you. I'll be brief because I really wanted to just touch on two points. One is I think I misspoke earlier when Judge Cassis asked about whether we had sent a copy of the complaint to representatives of the House and Senate. And I said I did not think so, but I've been advised that that did occur. So I want to, that under 904 we satisfied that provision. And the other issue I wanted to address is because Judge Pillard and Judge Cassis, you were interested in the distinction between 922A1 and 8-2. And at one point I think I said that we viewed that 922A1 could involve what I refer to as an anticipatory claim. And I think Judge Cassis said you showed some skepticism. And let me tell you what I was getting at specifically. In 922A1, it gives Congress the right to bring an action for declaratory judgment and injunctive relief on the ground that any order that might be issued, pursuant to Section 904 of this title, violates the Constitution. And we argued in our brief that that provided a broader right to Congress that an individual did not have, which is that might, now I realize you could read it. I was skeptical, and here's why, which is A1 is narrower in the sense that the focus of the challenge is on an order. And 8-2 is broader in the sense that the focus of the challenge is to the statute. As a general matter, challenges to statutes can often be brought pre-enforcement. Challenges to orders, almost by definition, are post-enforcement or at least post-order. So it seems a little unlikely to say that the distinction between 1 and 2 is that 1 governs anticipatory challenges and 2 governs existing to 2 applies after the order is already in place. No, I understand that, but I just wanted to point out what I was referring to. And also I think that in this case where Congress was very much aware through communications, some of which are attached as exhibits to the complaint, was aware of this issue that was brewing and that the Budget Act, the Balanced Budget Act, could give, could result in exactly what did result. Certainly a party like Community Oncology couldn't have gone in in advance and said, we think this is about to happen, please enjoin it, whereas Congress would have that right under A1. You don't think under A2, before any sequestration order had been issued, that you could have filed the lawsuit you're filing now and saying, and said, the Title 2 is unconstitutional because it permits the executive to override otherwise binding statutory formulas? Well, in terms of an as-applied challenge, I'm not sure that we could have if nothing had happened. Whether we could have made a facial challenge is a question that I probably haven't given enough consideration to. I mean, the heartland of A2 seems to be facial challenges. And the A1, I mean, it seems like the most reasonable reading of order that might be issued is this is a Congress that doesn't want to have to resort to sequestration orders, right? This is being enacted by Congress that said, this is the stopgap if, you know, our future colleagues are unable to actually pass a budget that comes in. And so it might be issued as saying they may not be ever issued, right, looking forward. This may be a null set. So it seems to me that the might is more readily understood that way. I see. Thank you.
judges: Pillard, Katsas, Sentelle